UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RICHARD YANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12CV92 SNLJ |
| | ) | |
| GEORGE LOMBARDI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This is a 42 U.S.C. § 1983 action in which the plaintiff alleges prison officials infringed on his federal constitutional rights by improperly censoring his incoming and outgoing Chinese language mail and by limiting his access to outgoing international telephone calls. Presently before the Court is defendants' Motion for Summary Judgment (#54). The matter is fully briefed and ripe for disposition.

**I.    Case Summary**

The following facts are undisputed except where indicated. Plaintiff is a prisoner incarcerated in the Missouri Department of Corrections ("MDOC"). Plaintiff alleges that the defendant MDOC employees serving in many different capacities --- George Lombardi, Tom Clements, Mariann Atwell, Patricia Cornell, Fred Johnson, Don Roper, Jeff Norman, Omer Clark, William Stange, Allen Hughes, Angela Riddell, Dwayne Kempker, Karen Malloy, Gary Phegley, and Cindy Griffith --- violated his First Amendment right to free speech by depriving him of communicating with his family in

1

Mandarin Chinese. Additionally, plaintiff alleges the prison regulation violated his rights to due process and equal protection under the Fourteenth Amendment.

The plaintiff, a naturalized American citizen born in China, made several attempts to write to his family in China in the Chinese language. His family in China also attempted to write to him in Chinese. Although Chinese is plaintiff's first language, plaintiff is able to speak and write in English well, as evidenced by his pleadings to the court. Plaintiff's relatives speak only Chinese and are unable to understand English. Following each attempted Chinese-language communication, mail clerks at both correctional institutions where plaintiff was housed, the Potosi Correctional Center ("PCC") and the Southeast Correctional Center ("SECC"), censored plaintiff's mail and sent him notice that his mail could not be delivered. Starting in December 2007, personnel at the Potosi Correctional Center rejected one holiday card written in Chinese in addition to two Chinese language letters. On January 15, 2008, plaintiff filed an Informal Resolution Request ("IRR") with PCC officials requesting that he be allowed to communicate with his family in Chinese. The request was denied per MDOC Institutional Services Policy IS 13-1.1 "Offender Mail Procedures."

On February 19, 2008, Plaintiff filed an Offender Grievance requesting that he be able to send and receive Chinese language mail and that MDOC should provide him with an interpreter under MDOC Institutional Services Policy IS 13-1.1. Defendant Roper denied the request on April 11, 2008. Plaintiff filed a Grievance Appeal on April 17, 2008, which stated the same request in addition to being able to call his family on

occasion. His appeal was denied on June 17, 2008 because the cards and letters were written in Chinese, and current resources MDOC had did not allow them to be translated.

Plaintiff did not receive another censorship rejection notice from MDOC until January 12, 2011. By this time, plaintiff was housed in SECC. Plaintiff followed the same complaint process as described above, first filing an IRR, then an Offender Grievance, and finally a Grievance Appeal. Each time, his complaint was denied. As a result, plaintiff filed this lawsuit.

On October 25, 2011 wrote a letter to Defendant Norman suggesting that it was within MDOC's reasonable efforts to translate plaintiff's mail to hire a Chinese language translator in MDOC's Jefferson City legal department or send his mail to be translated at the Iowa Bureau of Refugee Services in Des Moines, Iowa. Plaintiff did not receive a response to the letter, and his outgoing Chinese mail continued to be rejected by the censorship committee following the plaintiff's letter. Rejections continued until March 2012.

On November 14, 2011, plaintiff wrote to Securus Company, the telephone provider for SECC, inquiring as to why he was unable to make phone calls to China. Securus Company replied the following day stating that there was no international calling access. Since the filing of this lawsuit, international calling has been established at SECC, and defendants assert that the plaintiff has the ability to make international calls to China.

MDOC Institutional Services Policies IS 13-1.1 and IS 13-1.2 outline MDOC's procedures for censoring incoming and outgoing mail. "A reasonable effort will be made

3

to translate incoming and outgoing mail not in English." MDOC Institutional Services Policy IS 13-1.2 (III.E). Per IS 13-1.2 (III.C.2. h), MDOC will censor incoming written materials which "are or appear to be written or recorded in code or a language that staff are unable to interpret with current available resources." Additionally, general outgoing correspondence is determined to pose a risk to "security, good order, or discipline," and is therefore subject to censorship, when the correspondence "is written in a language that staff is unable to interpret with current resources." MDOC Institutional Services Policy IS 13-1.2 (III.d.2. g).

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Pursuant to Federal Rule Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a

4

jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976).

## III. Discussion

Plaintiff claims that his First and Fourteenth Amendment rights were violated as a result of the defendants' actions and policies.

### A. First Amendment Claims

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). However, "limitations may be placed on the exercise of those rights in light of the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) (citing *Turner*, 482 U.S. at 81). When a prisoner's rights are implicated, the question becomes whether the actions of prison officials were "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (citing *Turner*, 48 U.S. at 89).

5

The Supreme Court in *Turner* articulated a four-factor test to consider when considering the reasonableness of the prison regulation: (1) a "valid, rational connection" must exist between the regulation and a legitimate, neutral governmental interest; (2) the existence of other means of exercising the asserted constitutional right; (3) the impact that asserting the right will have on prison personnel, other inmates, and the allocation of prison resources; (4) whether the regulation represents an "exaggerated response" to prison concerns. 482 U.S. at 89-91. The existence of an "alternative that fully accommodates the prisoner's rights at de minimis costs to valid penological interests" is evidence of unreasonableness on the part of the state. *Id.* at 91. In balancing the rights of prisoners and institutional security, prison officials are afforded great deference. *Timm v. Gunter*, 917 F.2d 1093, 1098 (8th Cir. 1990) (citing *Turner*, 482 U.S. at 85).

### 1. Plaintiff's Chinese language mail

The Court first addresses the regulation prohibiting plaintiff's Chinese language mail. It is undisputed that MDOC will censor incoming and outgoing written materials that are written in a language that staff is unable to interpret with currently available resources. Plaintiff contends that such censorship infringes on his rights because he cannot communicate in the language of his choice.

In applying the *Turner* test, it must first be determined whether the censoring of the defendant's Chinese language mail is rationally related to a legitimate and neutral objective. *Turner*, 48 U.S. at 89. The connection between the regulation and the goal cannot "be so remote to render the policy arbitrary or irrational." *Id.* The policy must be

6

neutrally applied in restricting inmates' constitutional rights; that is, it must operate "without regard to the content of the expression." *Id.* at 90.

The purpose of the censorship policies for non-English mail is to "[maintain] the safety and security of correctional facilities and the public." MDOC Institutional Services Policy IS 13-1.2 (I). Censoring correspondence that is in another language achieves that mean by allowing prison officials to monitor the activities of inmates. It is conceivable that an inmate would use the mail for illegal purposes affecting safety and security. The regulation is more than remotely connected to the goal. The regulation passes the first prong of the *Turner* test.

The second prong of the *Turner* test explores other means for the prisoner's exercise of the right. When there are other avenues for exercising that right, the court should defer to the decision of prison officials. *See Turner*, 482 U.S. at 90. The right must be viewed "sensibly and expansively." *Thornburgh*, 490 U.S. at 418. Having another form of expression is sufficient to satisfy this prong of the test. *Id.* Plaintiff is, for example, able to communicate with his family through means other than written correspondence --- he can now place calls to his family in China.[1] Additionally, plaintiff testified in his deposition that there is a translator in the city where his family lives in China that may be able to translate his mail written in English.[2]  (#56-5 at 120-22.)

---

[1] In his deposition, plaintiff testified that although SECC did not have the capability to make international phone calls to China at the time this action was instituted, plaintiff is now able to place calls to his family in China. (#62-4, pg. 24.)

[2] Plaintiff states in his opposition briefing that the defendants fabricated their suggestion that plaintiff had written to his family in English and that he could write to his family in English and have a translator in their town translate to Chinese from English. However, plaintiff stated in his deposition that he has

7

Plaintiff could communicate with his family by writing in English in compliance with the policy, placing the burden on his family to translate into Chinese.[3] Therefore, the regulation satisfies the second prong.

Thirdly, the court must consider the impact that striking down the regulation will have on prison officials and other inmates. When overruling the validity of the regulation will have a "ripple effect" on the rights of other inmates and prison personal, the court should defer to the regulation. *See Turner*, 482 U.S. at 90 (deferring to the prison officials' finding that allowing inmates to correspond with inmates in other institutions allows prisoners to create informal organizations that may threaten the safety and security of prison personnel and prisoners alike, and the court upheld the prohibition on such correspondence). When exercising the right results in "significantly less liberty and safety for everyone else," the court should defer to the regulation. *Thornburgh*, 490 U.S. at 418 (quoting *Turner*, 482 U.S. at 90).

The MDOC policy states that a "reasonable effort will be made to translate incoming and outgoing mail not in English." Interpreters must be approved by the warden, and when an interpreter is not available, the mail will be forwarded to the censorship committee. MDOC, Institutional Services Policy IS 13-1.2 (III.E). It is undisputed that no MDOC employee is able to translate Chinese. Plaintiff's request not to follow this policy would have several possible ripple effects. First, locating and

---

written short notes to family in China. Plaintiff also stated in his deposition that a translator is present in his town who provides translation services to foreigners.

[3] Plaintiff argues that his family should not be burdened with locating a translator. However, that argument does not go to whether plaintiff's First Amendment rights have been violated.

8

qualifying someone to translate plaintiff's mail takes prison resources away from institutional programs for other inmates. Secondly, ignoring the policy altogether and allowing plaintiff to correspond in Chinese without censorship could be a "potential spur to criminal activity." *Turner*, 482 U.S. at 92. The ripple effect would cause a potential threat to security and safety of the general public, so the third prong of *Turner* test is satisfied.

The final prong of the Turner test is whether there is a reasonable alternative available to the prison. When an inmate can point to an "obvious, easy alternative," it is evidence that the regulation is unreasonable. *Id.* at 90. The burden is on the inmate to "point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 91.

Although the plaintiff has pointed to two alternatives to the rejection of his mail, neither is an easy alternative that is of "de minimis cost to a valid penological interest." *Id.* at 91. Plaintiff's first suggestion is that the MDOC office in Jefferson City should provide him with a translator because they are able to translate Spanish language mail in house. The cost of hiring an interpreter for plaintiff's Chinese language mail is greater than a de minimis cost. In his deposition, plaintiff points out that a translator was provided for his criminal proceedings, but plaintiff's criminal due process rights are not implicated here. Hiring a translator to facilitate plaintiff's personal mail appropriates MDOC resources in a way that takes away from all other prisoners, so it is not a viable alternative to the MDOC policy. Second, plaintiff suggests that his mail should be sent to the Iowa Refugee Services Bureau (the "Bureau") for translation. In *Thongvahn v.*

*Thalacker*, 17 F.3d 256 (8th Cir. 1994), upon which the plaintiff relies heavily, the Bureau translated a Laotian inmate's mail free of charge for the Iowa Department of Corrections. However, plaintiff has not shown that the Bureau even has a Chinese translator or that, if it did, its services would be available to him. Use of the translation services from another state also does not constitute an "obvious, easy alternative" for MDOC. *Turner*, 498 U.S. at 90. Therefore, plaintiff's challenge fails the fourth prong of the *Turner* test.

The undisputed facts show that plaintiff's claim that censorship of his Chinese language mail violates his First Amendment rights fails, and summary judgment is appropriate.

### 2. Plaintiff's International Phone Calls

Next, plaintiff's complaint alleges that he is unable to make international phone calls to family members. Prior to February 1, 2012, no one at the prison could make international phone calls. After that date, prisoners could make international phone calls, but plaintiff was unable to make phone calls to China. The defendants submit (by way of an affidavit from defendant Clark) that now plaintiff is able to make phone calls to China. Plaintiff appears to dispute that fact.

Regardless, even assuming that the international calling issue has been resolved,[4] defendants' motion for summary judgment fails to address whether plaintiff's earlier inability to make international phone calls violated his constitutional rights. Plaintiff

---

[4] Defendants maintain that because plaintiff did not respond to their statement of facts, the statements are all admitted. However, although plaintiff did not respond to the statement of facts in a standard form, he did cite to and respond to many of their facts. (*See* #62 at p.18-19.)

seeks not only injunctive relief but also damages. Therefore, summary judgment cannot be granted to defendants regarding plaintiff's inability to make international phone calls.

### B. Fourteenth Amendment Claim

Plaintiff also claims that his Fourteenth Amendment right to due process and equal protection was violated by defendants' policies related to Chinese language mail and international phone calls to China. Defendants' motion does not address the Fourteenth Amendment claim, which is based primarily on plaintiff's assertion that he was treated differently than Spanish-speaking prisoners. Therefore, the Court does not address whether defendants are entitled to summary judgment on that claim.

## IV. Conclusion

Summary judgment will be granted to defendants on the plaintiff's First Amendment claim concerning his Chinese language mail. Claims remaining in this case are plaintiff's First Amendment claim regarding his international phone calls and his Fourteenth Amendment claims. Should defendants wish to move for summary judgment on those remaining issues, they may move to do so.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment (#54) **GRANTED IN PART and DENIED IN PART.**

**IT IS HEREBY ORDERED** that defendants are granted Summary Judgment on plaintiff's First Amendment claim regarding his Chinese language mail.

Dated this 23rd day of July, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE