UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RICHARD YANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12CV92 SNLJ |
| | ) |
| GEORGE LOMBARDI, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This is a 42 U.S.C. § 1983 action in which the plaintiff alleges prison officials infringed on his federal constitutional rights by improperly censoring his incoming and outgoing Chinese language mail and by limiting his access to outgoing international telephone calls. This Court has already granted defendants summary judgment on plaintiff's claim regarding censorship of his Chinese-language mail. Presently before the Court is defendants' Motion for Summary Judgment (#80) and defendants' Motion to Strike (#87). The matter is fully briefed and ripe for disposition.

**I.    Case Summary**

The following facts are undisputed except where indicated. Plaintiff is a prisoner incarcerated in the Missouri Department of Corrections ("MDOC"). Plaintiff alleges that the defendant MDOC employees serving in many different capacities --- George Lombardi, Tom Clements, Mariann Atwell, Patricia Cornell, Fred Johnson, Don Roper, Jeff Norman, Omer Clark, William Stange, Allen Hughes, Angela Riddell, Dwayne

1

Kempker, Karen Malloy, Gary Phegley, and Cindy Griffith --- violated his First Amendment right to free speech by depriving him of communicating with his family in Mandarin Chinese. Additionally, plaintiff alleges the prison regulation violated his rights to due process and equal protection under the Fourteenth Amendment.

The plaintiff, a naturalized American citizen born in China, has family and friends in China with whom he wishes to communicate. As discussed in the Court's memorandum regarding plaintiff's Chinese language mail, plaintiff is able to write in English and mail letters in English to his family.

MDOC has enacted Institutional Services ("IS") Policy 13-2.1 – Offender Access to Telephones. Pursuant to that policy, use of the telephone is a privilege and not a right. Each offender has a PIN that allows him to make long-distance, collect calls. If an offender has a problem with his PIN, he is required to complete a PIN trouble reporting form. At some point in 2011, plaintiff was unable to make international phone calls to China. On November 14, 2011, plaintiff wrote to Securus Company, the telephone provider for SECC, inquiring as to why he was unable to make phone calls to China. Securus Company replied the following day stating that there was no international calling access. Since the filing of this lawsuit, international calling has been established at SECC, and defendants assert that the plaintiff has the ability to make international calls to China.

## II.	Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with

such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Pursuant to Federal Rule Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976).

**III. Discussion**

Defendants contend they are entitled to summary judgment in this case on both remaining claims.

3

### A. Plaintiff's International Phone Calls

The parties agree that plaintiff is now able to make phone calls from prison to China. With respect to the time during which plaintiff could not make phone calls to China, a "prisoner has no right to unlimited telephone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). Prisoners do have a right to communicate generally, but "the extent of inmates' First Amendment right to communicate with the outside world is a fact-intensive universe." *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012). Here, it appears that plaintiff was unable to make international phone calls to China for a time period, but, not long after plaintiff complained, the ability to make such phone calls was reinstated. Plaintiff insists that his constitutional rights were infringed upon when he was unable to make phone calls to China and could not communicate with his relatives in Chinese-language mail. As this Court has already determined, plaintiff was not prohibited from communicating with friends and family generally, as he was permitted to communicate in (English) writing, and requiring that he communicate using English writing did not infringe upon his rights. "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting *Fillmore v. Ordonez*, 829 F.Supp. 1544, 1563–64 (D.Kan.1993), aff'd, 17 F.3d 1436 (10th Cir.1994)). There is nothing unreasonable regarding the MDOC policy or the interrupted access to international phone calls.[1]

---

[1] The record is unclear regarding the length of time plaintiff was unable to make international phone calls. It appears undisputed that he was able to call internationally sometime before November 2013, but the individuals plaintiff was calling may have refused to accept his phone calls. (*See* Doc. #56-1, Affidavit of Omer Clark.)

4

## B. Equal Protection

Plaintiff's equal protection claim rests on the purportedly disparate treatment by the prison with respect to himself (a Chinese-speaking prisoner) and Spanish-speaking prisoners. The Equal Protection Clause protects against arbitrary classifications by state actors. *See* U.S. Const. amend. XIV § 1. However, "unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage ....," classification need only be rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Defendants, relying on *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 557 (E.D. Va. 2006), suggests that prisoners are not considered a suspect class. The Court construes plaintiff's complaint, however, to be related to his class as a Chinese-speaking prisoner --- not merely a prisoner.

> It is not clear whether the speaking of a language other than English as a primary language, by itself, serves as an indicator of race or national origin for purpose of the Equal Protection Clause. *See e.g.*, *Hernandez v. New York*, 500 U.S. 352, 371 (1991)("It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis."); *Soberal-Perez v. Heckler*, 717 F.2d 36 (2d Cir.1983) ("language, by itself, does not identify members of a suspect class").

*Rodriguez-Ramirez v. Helder*, No. CIV. 06-5062, 2007 WL 2752362, at *9 (W.D. Ark. Sept. 20, 2007). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race ." *Wolff v.*

*McDonnell*, 418 U.S. 539, 556 (1974) (internal citation omitted). However, it appears that the Eighth Circuit has applied the *Turner* test --- and not a more-stringent strict scrutiny test --- to the matter of equal protection claims and non-English-language mail. *See Thongvahn v. Thalacker*, 17 F.3d 256 (8th Cir. 1994).

The *Turner* test, which refers to *Turner v. Safley*, 482 U.S. 78, 84 (1987), recognizes that "limitations may be placed on the exercise of [prisoners' Constitutional rights] rights in light of the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) (citing *Turner*, 482 U.S. at 81). When a prisoner's rights are implicated, the question becomes whether the actions of prison officials were "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (citing *Turner*, 48 U.S. at 89). The Eighth Circuit discussed the test as applied to a disparate language requirement policy in *Thongvanh*, 17 F.3d at 259. In *Thongvanh*, a Laotian prisoner was permitted to write to his parents and grandparents in Laotian, but he was required to write to everyone else in English. Spanish and German, inmates, however, were not subjected to the English-only policy. The Court upheld a jury verdict for plaintiff where there existed a readily-available alternative at de minimis cost to the institution (i.e., sending correspondence to Iowa's Refugee Service Center, a free translating service in the state that was capable of translating Laotian writing). *Id.*

6

This Court has already determined that the English-only prison policy passes the *Turner* test. In addition, the "United States Supreme Court has held that in order to prevail on an equal protection claim, a plaintiff must show that a particular defendant acted with discriminatory purpose." *Giles v. Henry*, 841 F. Supp. 270, 274 (S.D. Iowa 1993) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).) Plaintiff has offered no evidence that any defendant acted with a discriminatory purpose. And, unlike in the *Thongvanh* case, in which a readily-available alternative to the English-only policy existed, *see* 17 F.3d at 259, the plaintiff had made no offer of any alternative that would impose only de minimis cost on the prison. Notably, although the MDOC policy states that reasonable effort will be made to provide translation services (*see* Doc. #72 at 3-4), it is not surprising (nor indicative of discriminatory intent) that such services would be available for Spanish-speaking prisoners but not Chinese-speaking prisoners. As a result, plaintiff's equal protection claim fails, and summary judgment will be granted to defendants.

### C. Due Process

As defendants point out, plaintiff's due process claim is unclear. It appears that plaintiff conflates his equal protection and First Amendment claims with due process. As this Court has already addressed the First Amendment and equal protection claims and determined that defendants are entitled to summary judgment, plaintiff's purported due process claim also fails.

**IV.     Motion to Strike**

Defendants moved to strike Exhibit D attached to plaintiff's memorandum in opposition to defendants' motion for summary judgment. [2] The exhibit is a letter from former Assistant Attorney General Thomas D. Smith to plaintiff offering to compromise to settle the lawsuit. Federal Rule of Evidence 408 prohibits the use of compromise and settlement offers. The Court agrees that the exhibit should be excluded from evidence, and this Court has disregarded it.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment (#80) and Motion to Strike (#87) are **GRANTED.**

Dated this __24th__ day of April, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

---

[2] "A 'court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter.'" *Anzaldua v. Northeast Ambulance and Fire Protection Dist.*, 4:13CV1257 ERW, 2014 WL 466228, at *3 (E.D. Mo. Feb. 5, 2014) (quoting Fed.R.Civ.P. 12(f)). "As is apparent from the language of Rule 12(f), a motion to strike may only be directed to material contained in a 'pleading.'" *Id.* (citing Rule 12(f)); *see also Coleman v. City of Pagedale,* 2008 WL 161897 at *4 (E.D.Mo. Jan. 15, 2008). "Pleadings are defined as: 1) a complaint; 2) an answer to a complaint; 3) an answer to a counterclaim designated as a counterclaim; 4) an answer to a cross claim; 5) a third-party complaint; 6) an answer to a third-party complaint; and 7) if the court orders one, a reply to an answer." *Id.* (citing Fed.R.Civ.P. 7(a)). Although the "Motion to Strike" is therefore procedurally incorrect under these circumstances, the Court addresses the substance of the motion.